## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DARYL E. HARRIS,

          *Plaintiff*,

    v.

PETE BUTTIGIEG, *et al.*,

          *Defendants.*

No. 23-cv-2752 (DLF)

### <u>MEMORANDUM OPINION</u>

Daryl Harris brings this action against the Secretary of Transportation and the Department of Transportation Federal Aviation Administration ("FAA"), under Title VII of the Civil Rights Act; 42 U.S.C. § 1981; and the Family and Medical Leave Act. Compl., Dkt. 1. He alleges that the defendants denied him a promotion and subjected him to a hostile work environment because of his race and disability status. Before the Court is the defendants' Motion to Dismiss, Dkt. 9. For the reasons that follow, the Court will grant in part and deny in part the defendants' motion.

## I.    BACKGROUND

Harris is an "African American" male who was employed as a "Supervisory Management Analyst/Director" by FAA. Compl. ¶¶ 3, 5, 6. The complaint alleges that Harris is "disabled," but does not specify the nature of his disability. *Id.* ¶ 3. Peter Merkle, a Caucasian male, was Harris's supervisor at FAA from December 2018 to March 2022. *Id.* ¶ 8. Abigail Smith, a Caucasian female, became Harris's direct supervisor in March 2022. *Id.* ¶ 9. Harris and his supervisors worked in the Unmanned Aircraft Systems Integration Office. *Id.* ¶ 10. Harris was the only African American male manager in the Office. *Id.* ¶ 16.

In 2018, Unmanned Aircraft Systems began a reorganization of its divisions and functions. *Id.* ¶ 12. Under a preliminary reorganization plan, Harris was assigned additional supervisory responsibilities and preliminarily approved for a promotion from K-Band to L-Band, which would have increased his compensation and bonuses. *Id.* But before the plan was implemented, Merkle assumed the role of Executive Director of the Integration Office. *Id.* ¶ 13. Harris alleges that Merkle immediately began to "target, scrutinize, [and] attack" him, and that Merkle canceled all meetings with him, including meetings that were "customarily held" between the Executive Director and senior managers. *Id.* ¶¶ 16–17. According to Harris, no Caucasian managers were similarly "demeaned" by Merkle; and Merkle approved a 7% increase in salary for Joseph Morra, a Caucasian male manager, but did not give any salary increase to Harris. *Id.* ¶¶ 17–18. In March 2019, Merkle submitted the Office's final reorganization plan and "the only portion of the reorganization plan that was excised was [Harris's] promotion to L-Band." *Id.* ¶ 22.

The complaint asserts that Merkle made two racially discriminatory comments in 2019 and 2020: he allegedly asked a black female employee why she was "acting like a Black Lady;" and commented that he was "excited about getting new neighbors and no longer being surrounded by Ethiopians." *Id.* ¶¶ 25, 27. An employee submitted an anonymous complaint about Merkle's racially discriminatory comments, and as part of an internal investigation in August 2020, Harris submitted a statement. *Id.* ¶¶ 29–30. Harris alleges that because of the statement, in November 2020, Merkle "escalated" his hostile treatment and lowered Harris's November 2020 performance rating, which reduced his bonus and merit increases. *Id.* ¶¶ 30–32. Harris also alleges that Merkle has a history of terminating employees of color: he reassigned and fired two African American female executive assistants and ultimately hired a Caucasian female for that position. *Id.* ¶ 69.

According to Harris, Merkle subjected him to professional "sabotage" and repeatedly made hostile and demeaning comments. *Id.* ¶¶ 35–43, 53–54, 59. In 2021, Merkle criticized him for failing to complete a report that he did in fact complete; referred to him as "dull and boring" and "mean"; denied his inquiries for a salary increase and promotion; and "pressured him" to pursue other jobs. *Id.* ¶¶ 35–43. On February 17, 2022, Merkle submitted a "deficient" assignment on Harris's behalf, without Harris's knowledge or involvement, which resulted in Harris being "embarrass[ed]" when he was accused of producing the deficient assignment. *Id.* ¶¶ 44–46. The deficient assignment was to "sabotage" him and "block" him from being promoted to Deputy Executive Director. *Id.* ¶¶ 47–49. Later that February, Merkle terminated Harris's FedView project—an initiative geared toward improving the Office's diversity, equity, and inclusion— because the project "produced evidence of Merkle's discriminatory work environment." *Id.* ¶¶ 50– 52. In March 2022, Merkle berated Harris during a staff meeting about the accumulation of storage boxes in a shared office space. *Id.* ¶ 53.

Harris alleges that after Smith became his supervisor in March 2022, she also created a hostile work environment and engaged in "racially demeaning" behavior. *Id.* ¶¶ 9, 55. According to Harris, Smith made "threatening and harassing comment[s]" and "direct threats" "suggesting it was time for [Harris] to move away from the organization." *Id.* ¶¶ 57, 59–60. Smith allegedly directed "continual demeaning comments" toward Harris but not toward any of his Caucasian co-workers. *Id.* ¶¶ 61–62. From April to October 2022, Smith excluded Harris from two meetings, lowered his annual performance review "without any legitimate reason," and "purposefully delayed" the processing of Harris's change of duty after he relocated to Houston. *Id.* ¶¶ 63–67. Harris submitted a Family and Medical Leave Active request that Smith and Merkle purportedly ignored. *Id.* ¶ 68.

Harris filed a Complaint of Discrimination with EEO on July 15, 2022, and he obtained a right to sue on June 22, 2023. *Id.* ¶¶ 72–73.  On September 20, 2023, Harris filed the instant action against the Secretary of Transportation and the FAA.  *See* Compl.  He asserts (I) race discrimination, retaliation, and hostile work environment under Title VII, *see* 42 U.S.C. §§ 2000 *et seq.*, and under 42 U.S.C. § 1981 (II) a claim under the Family and Medical Leave Act of 1993, *see* 29 U.S.C. §§ 2601 *et seq.*; and (III) a request for relief pursuant to the Declaratory Judgment Act, *see* 28 U.S.C. § 2201.  The defendants move to dismiss.

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  A complaint need not contain "detailed factual allegations," *Iqbal*, 556 U.S. at 678, but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility," *id.* (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471,

476 (D.C. Cir. 2012) (internal quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited, *id.*; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A Rule 12(b)(6) dismissal "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

## III.    ANALYSIS

The defendants move to dismiss on various grounds: first, that Harris failed to exhaust and fails to state a claim under Title VII; second, that he fails to state a FMLA claim; third, that he cannot assert a claim under the Declaratory Judgment Act, which does not provide an independent cause of action. The Court will address each argument in turn.

### A.    Title VII Claims[1]

#### 1.    *Exhaustion*

A federal employee bringing claims under Title VII must exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission before bringing suit in

---

[1] Harris also asserts his employment discrimination claims under 42 U.S.C. § 1981. But the Supreme Court has "established that Title VII [is] the exclusive judicial remedy for claims of

federal district court.  *Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015); *see generally* 42 U.S.C. § 2000e-5.  Administrative regulations further provide that an aggrieved person must "initiate contact with a[n] [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory."  29 C.F.R. § 1614.105(a)(1).  The 45-day period begins to run when an employee has a "reasonable suspicion" of an unlawfully discriminatory employment act.  *Adesalu v. Copps*, 606 F. Supp. 2d 97, 102 (D.D.C. 2009).  An employee must exhaust his administrative remedies for each "discrete" discriminatory action.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).

The defendants move to dismiss the Title VII discrimination and retaliation claims based on the defendant's materially adverse employment actions predating February 5, 2022—45-days before the plaintiff first contacted EEO on March 21, 2022.  *See* Final Agency Decision, at 3, Dkt. 9-1.  Harris's discrimination and retaliation claims rely on allegations about the defendants' actions, including the March 2019 failure to promote Harris and the November 2020 reduction in his performance review, which predate that cutoff.  *See* Compl. ¶¶ 22, 31.  Because Harris did not timely file any EEO charge asserting those allegations, the Court will dismiss any claims based on such conduct.

### 2.    *Failure to State a Claim*

#### i.    Discrimination Claims

Title VII bars employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."

---

discrimination in the context of federal employment."  *Smalls v. Emanuel*, 840 F. Supp. 2d 23, 29 (D.D.C. 2012) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976)).  Accordingly, the Court "lacks subject matter jurisdiction to hear allegations" of race discrimination, retaliation, and hostile work environment asserted under § 1981, *id.* at 30, so those claims must be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

42 U.S.C. § 2000e-2(a)(1); *see Moore-Davis v. U.S. Dept. of the Navy*, 694 F. Supp. 3d 116, 123 (D.D.C. 2023).  Where a plaintiff offers only circumstantial evidence of discriminatory intent, courts evaluate claims under these statutes using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Gaujacq v. EDF, Inc.*, 601 F.3d 565, 576 (D.C. Cir. 2010).  To state a discrimination claim, the complaint must allege facts that, if true, would establish that "(1) [the claimant] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007).  But "an employment discrimination plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss."  *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011).

a.  Adverse Employment Action

Harris alleges discrimination on the basis of his race, a protected characteristic.  *See* 42 U.S.C. § 2000e-2(a)(1).  Next, Harris must identify a cognizable "adverse action" taken by his employer—that is, one affecting the "terms, conditions, or privileges" of his employment.  *Wiley*, 511 F.3d at 155, 161.  The D.C. Circuit recently clarified that an employer's adverse action does not require an "objectively tangible harm," and need only "affect[] an employee's terms, conditions, or privileges of employment" to support a discrimination claim.  *Chambers v. District of Columbia*, 35 F.4th 870, 877, 878 (D.C. Cir. 2022) (en banc) (quoting 42 U.S.C. § 2002e-2(a)(1)).  "An adverse employment action is a disadvantageous, but not necessarily significant or substantial, change to a term, condition, or privilege of employment."  *Teran-Sanchez v. Stream Realty Partners, L.P.*, No. 23-cv-3189 (DLF), 2024 WL 4215673, at *2 (D.D.C. Sept. 17, 2024) (citation omitted).  Although the Circuit has not yet resolved whether *de minimus* harms constitute

adverse employment actions, actionable claims "are still limited to those where an employer causes 'material adversity,' not 'trivial harms.'"  *Black v. Guzman*, No. 22-cv-1873 (BAH), 2023 WL 3055427, at *7 (D.D.C. Apr. 24, 2023) (citing *Wiley*, 511 F.3d at 161) (cleaned up).

Most of the incidents set forth in the complaint do not meet the materiality standard necessary to be an adverse employment action.  For example, the allegations that his supervisors undermined his reputation and publicly criticized him in front of other employees are not legally cognizable adverse actions.  *E.g., Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011) (noting that "public humiliation or loss of reputation" does not constitute an adverse employment action); *Jones v. Bush*, 160 F. Supp. 3d 325, 346 (D.D.C. 2016) (noting that "acts of disrespect or rudeness are nothing like the ultimate employment decisions typically deemed adverse" (citation omitted)). Likewise, for purposes of his discrimination claim, the allegation that the defendants delayed processing Harris's change of duty to Houston, *see* Compl. ¶ 66, is not an adverse action because the complaint is conclusory and provides no details as to how the delay "negatively impacted his compensation."  *Jimenez v. Wolf*, No. 19-cv-2055 (CRC), 2020 WL 13546497, at *10 (D.D.C. Sept. 29, 2020) (dismissing claim based on "delays in personnel actions" where the complaint contained only conclusory allegations about the impact of the delay).

But other parts of the complaint do allege material changes to the terms and conditions of Harris's employment.  In particular, (1) Merkle's failure to promote Harris around February 2022, and (2) the October 2022 decrease of Harris's performance review, could constitute adverse employment actions.  *See Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (negative performance appraisal affecting salary or promotion); *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 375 (D.C. Cir. 2010) (failure to promote).

b.   Inference of Discrimination

Next, Harris must show that each of these adverse actions "gives rise to an inference of discrimination." *Wiley*, 511 F.3d at 161.  The complaint presents no direct evidence of Merkle or Smith's discriminatory intent.  *See Tallbear v. Perry*, 318 F. Supp. 3d 255, 260 (D.D.C. 2018) (explaining that direct evidence is, for example, when "the employer overtly refers to the employee's protected trait when making an unfavorable employment decision." (cleaned up)). Thus, the Court must evaluate the totality of the circumstantial evidence that Harris "was treated differently from similarly situated employees who are not part of the protected class." *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005).  To establish he was similarly situated, a plaintiff must present facts from which the Court could infer that "all of the relevant aspects of [his] employment situation were nearly identical to [the comparator]." *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999) (cleaned up).  In particular, to plead a *prima facie* case for a failure-to-promote claim, Harris must present some evidence "that [he] was qualified for and applied for [the] promotion, that [he] was considered for and denied the promotion, and that other employees of similar qualifications who were not members of the protected group were indeed promoted at the time the plaintiff's request for promotion was denied." *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C. Cir. 1981).

Harris fails to identify any similarly situated comparator who received a promotion or superior performance review when he did not.  Harris complains that in February 2022, the Deputy Executive Director position was given to Smith, a Caucasian female.  Although he conclusorily asserts that he had greater "seniority and superior qualifications" than Smith, *see* Compl. ¶ 49, he provides no supporting evidence: for example, he does not highlight any greater educational qualifications, professional experience, technical skillset, or history of superior performance from

9

which the Court can infer that he was similarly qualified to Smith. E.g., *Black*, 2023 WL 3055427, at *9 (dismissing claims where plaintiff's comparator "did not occupy the same positions and were likely not performing the same duties"); *Beaulieu v. Barr*, No. 15-cv-896 (TJK), 2019 WL 5579968, at *4 (D.D.C. Oct. 29, 2019). Likewise, Harris does not identify any similarly situated comparator who received a superior annual performance review in October 2022, when his was downgraded. *See, e.g., Harris v. Mayorkas*, No. 21-CV-1083 (GMH), 2022 WL 3452316, at *6 (D.D.C. Aug. 18, 2022) (dismissing discrimination claims because the plaintiff did not "even generally describe any comparator employees.").

Because Harris falls far short of pleading facts showing that similarly situated employees were promoted or given higher reviews, the Court will dismiss his discrimination claims.

### ii. Retaliation Claims

An employee claiming retaliation under Title VII must ultimately prove "(1) that [the] employee engaged in statutorily protected activity; (2) that the employee suffered a materially adverse action by the employee's employer; and (3) that a causal link connects the two." *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Libr. of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013). "[A]n employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination" is a statutorily protected activity. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013) (citing 42 U.S.C. § 2000e–3(a)). "[I]n the absence of direct evidence of retaliation such claims are generally limited to conduct occurring shortly after the employee's protected activity." *Pueschel v. Chao*, 955 F.3d 163, 167 (D.C. Cir. 2020). To survive "[a] motion to dismiss, [a] complaint must contain sufficient factual matter, accepted as true, to plausibly establish those three elements." *Howard R.L. Cook*, 737 F.3d at 772 (internal quotation marks omitted).

Harris alleges that Merkle and Smith retaliated against him for initiating the EEO process underlying this case.  He contacted an EEO counselor on March 21, 2022, and the next day, on March 22, Smith allegedly made a comment that "she does not care if employees file complaints against her because she is not afraid of them."  Compl. ¶ 57*; see* Final Agency Decision, at 3.  Harris then filed his formal EEOC charge on July 15, 2022.  *See* Final Agency Decision, at 3.  Two months later, in September 2022, Smith and Merkle allegedly delayed the processing of Harris's change of duty to Houston,[2] and in October, Merkle lowered Harris's performance review, impacting his salary.  At least at this early stage, Smith's comment implying awareness that Harris planned to file an EEO complaint, taken together with the two-month gap between his formal charge and the allegedly retaliatory actions, are enough to survive a motion to dismiss.  *See Blackmon-Malloy v. United States Capitol Police Bd.*, No. 01-cv-2221 (EGS), 2024 WL 4298853, at *25 (D.D.C. Sep. 26, 2024).

Accordingly, the Court will permit Harris to proceed on his theory that the defendants delayed his change of duty and lowered his performance review in retaliation for his EEO charge.

### iii.    Hostile Work Environment Claim

To prevail on a hostile work environment claim, a plaintiff must show that his employer "subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v.*

---

[2] At this stage, the Court assumes without deciding that the processing delay may serve as an adverse action for purposes of the plaintiff's retaliation claims, even if it is insufficient for his discrimination claim, because the materiality standard for an "adverse action" for a retaliation claim is lower.  *See Chambers*, 35 F.4th at 876 ("Unlike the antidiscrimination provision, the antiretaliation provision is not expressly limited to actions affecting the terms, conditions, or privileges of employment.").

*Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  The hostility standard is "demanding to ensure that [work environment claims] do[] not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Sporadic incidents of rude or unprofessional behavior are insufficient to establish an environment of "severe or pervasive" hostility.  *Barbour v. Browner*, 181 F.3d 1342, 1348–49 (D.C. Cir. 1999).  And plaintiffs cannot "bootstrap their alleged discrete acts of retaliation [or disparate treatment] into a broader hostile work environment claim." *Baloch v. Norton*, 517 F. Supp. 2d 345, 364 (D.D.C. 2007), *aff'd sub nom. Baloch v. Kempthorne*, 550 F.3d at 1201; *see also Hampton v. Vilsack*, 760 F. Supp. 2d 38, 57 (D.D.C. 2011), *aff'd*, 685 F.3d 1096 (D.C. Cir. 2012) ("Plaintiff cannot . . . rely on the discrete acts upon which he bases his discrimination and retaliation claims to support a hostile work environment claim.").

Harris does not plead a plausible claim for hostile work environment.  His allegations that Merkle criticized and berated him in front of co-workers, made two racially insensitive comments, and called him "dull and boring" and "mean"; and that Smith made "continual" and "racially demeaning" comments, are not enough to support his claim.  Compl.  ¶¶ 19, 25, 27, 37, 61; *see Park v. Howard Univ.*, 71 F.3d 904, 906 (D.C. Cir. 1995) ("[C]asual or isolated manifestations of a discriminatory environment, such as a few ethnic or racial slurs, may not raise a cause of action." (quotation marks omitted)); *Singleton v. Potter*, 402 F. Supp. 2d 12, 43 (D.D.C. 2005) (allegations of "workplace scrutiny and infrequent, somewhat offensive generalizations are simply too mild and too common in many workplaces to constitute" harassment); *Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 54–55 (D.D.C. 2004) (finding no hostile environment where plaintiff was "humiliated" at meetings, screamed at once, told to "shut up and sit down," and subject to "constantly hostile and hypercritical" management).  Harris's accusations of so-called professional "sabotage," such as excluding him from meetings and canceling his FedView project,

also fall short of the "extreme" misconduct that makes a workplace hostile.  *Faragher*, 524 U.S. at 788.  Such "ordinary tribulations of the workplace" that regularly arise in business organizations do not constitute legally cognizable harassment as a matter of law.  *Id.*; *see Abebio v. G4S Gov't Solutions, Inc.*, 72 F. Supp. 3d 254, 259 (D.D.C. 2014).

Taken as a whole, Harris's allegations do not rise to the level of severity required to sustain a claim for hostile work environment.  Accordingly, the Court will dismiss the claim.

### B.    FMLA Claim

FMLA guarantees leave to covered employees for, among other reasons, "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  Employers may not "interfere with, restrain, or deny the exercise" of FMLA rights, *id.* § 2615(a)(1), or "discriminate against any individual for opposing any practice made unlawful" by the FMLA, *id.* § 2615(a)(2).  To prevail on an FMLA interference claim, a plaintiff must show that "(1) he was entitled to take leave because he had a 'serious health condition,' (2) he gave his employer adequate notice of his intention to take leave, and (3) his employer denied or otherwise interfered with his right to take leave."  *Elzeneiny v. D.C.*, 195 F. Supp. 3d 207, 217 (D.D.C. 2016) (quoting *Hodges v. D.C.*, 959 F. Supp. 2d 148, 155 (D.D.C. 2013)).

Harris fails to allege any facts supporting the first two elements of a FMLA interference claim.  Indeed, the entire complaint references his FMLA claim only twice: first, Harris asserts that at some point in time, he "submitted a Family and Medical Leave Act request that was never responded to by his supervisors . . . [and] he was required to take personal leave for a matter that should have been covered by the Family and Medical Leave Act."  *See* Compl. ¶ 68.  Second, he asserts that his leave request was "related to [his] own serious health condition that made him

unable to perform his job." *Id.* ¶ 83.  But these conclusory assertions, devoid of any detail, are insufficient to create a plausible inference that Harris suffered a health condition protected under FMLA.  *See Staton v. Children's Natl. Med. Ctr.*, No. 20-cv-03328 (DLF), 2022 WL 4446396, at *5 (D.D.C. Sept. 23, 2022).  Further, Harris does not even suggest that he provided his employers with sufficient notice of his intent to take FMLA leave.  *See Elzeneiny*, 195 F. Supp. 3d at 217. Because the complaint is devoid of evidence that the defendants interfered with his FMLA rights, the Court will grant the defendants' motion to dismiss the claim.

## C.    Request for Relief under the Declaratory Judgment Act

The Declaratory Judgment Act provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a) (emphasis added); *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (relief under the Act is within the "substantial discretion" of the district court).  "There is no [absolute] right to a declaratory judgment in federal courts" and district courts often consider whether other remedies are available to remedy the case or controversy at issue.  *Hanes Corp. v. Millard*, 531 F.2d 585, 591 & n.4 (D.C. Cir. 1976).  Further, a declaratory action "under § 2201 is not a separate cause of action, but rather a prayer for relief."  *Glenn v. Thomas Fortune Fay*, 222 F. Supp. 3d 31, 35 (D.D.C. 2016).  Harris cannot state a claim under the Declaratory Judgment Act because that statute does not "provide a cause of action."  *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011).  Accordingly, Count III will be dismissed.

## CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss, Dkt. 9, is GRANTED in part and DENIED in part. The plaintiff may proceed on his Title VII retaliation claim against the Secretary of Transportation[3] on Count I, based solely on the theory that his supervisors retaliated against him for filing an EEO charge. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

January 30, 2025

---

[3] The plaintiff's only surviving claim in this action is under Title VII. "The only proper [federal] defendant in a Title VII suit . . . is the head of the department, agency, or unit in which the allegedly discriminatory acts transpired." *Hackley v. Roudebush*, 520 F.2d 108, 115 n.7 (D.C. Cir. 1975) (citation and quotations omitted). According, FAA is dismissed as a defendant from this action.